```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/7/2018
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
KENNETH J. WIEGMAN,                                         :
                                                            :
                              Plaintiff,                    :
                                                            :      16-CV-3074 (VSB) (SN)
               -v-                                          :
                                                            :      **OPINION AND ORDER**
CAROLYN COLVIN, Acting Commissioner of                      :
Social Security,                                            :
                                                            :
                              Defendant.                    :
                                                            :
------------------------------------------------------------X

Appearances:

Terry I. Katz
Terry Katz & Associates, P.C.
Westbury, New York
*Counsel for Plaintiff*

Susan D. Baird
United States Attorney's Office
New York, New York
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

       Plaintiff Kenneth J. Wiegman brings this action pursuant to § 205(g) of the Social Security Act (the "SSA"), 42 U.S.C. §§ 405(g), seeking judicial review of a determination by the Commissioner of Social Security (the "Commissioner") that he is not entitled to Supplemental Security Income ("SSI") or disability insurance benefits ("DIB"). Plaintiff and Defendant cross-moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

       On August 10, 2017, Magistrate Judge Sarah Netburn issued a detailed and thorough Report and Recommendation ("Report" or "R&R") recommending that Plaintiff's motion for

judgment on the pleadings be denied and the Commissioner's cross-motion for judgment on the pleadings be granted. (Doc. 23.) Before me is Plaintiff's objection to the Report. For the reasons discussed below, I adopt the Report in full.

I. **Factual Background and Procedural History**

I assume the parties' familiarity with the facts and record of prior proceedings, and restate briefly only the information necessary to explain my decision.[1]

Plaintiff was born on February 8, 1970. (R&R 2.)[2] He worked as a truck operator from 2002 to 2014. (*Id.*) In December 2013, Plaintiff was in a motor vehicle accident, which resulted in his claim for disability. (*Id.*) Because of his accident, Plaintiff experienced severe headaches, mood swings, concentration deficits, and severe pain in his back and neck that subsided for about an hour at a time with medication. (*Id.*)

Several physicians observed and treated Plaintiff immediately after and in the months following his accident. First, he was treated at Sharon Hospital after he complained of low back pain radiating to his right leg following the accident. (*Id.* at 3.) The attending physician observed that Plaintiff was neurologically intact and had full muscle strength throughout. (*Id.*) An x-ray of his lumbar spine showed minimal degenerative changes. (*Id.* at 3–4.) Plaintiff visited Dr. Frank Kessler, his general physician, on December 18, 2013 and January 2, 2014. (*Id.* at 4.) Dr. Kessler prescribed medication for Plaintiff's lower back pain, neck pain, and spasms in the trapezius muscle. (*Id.*) He provided Plaintiff a work excuse statement for approximately three weeks and referred Plaintiff to Dr. Daniel Southern for physical therapy. (*Id.*) Dr. Southern evaluated Plaintiff on January 9, 2014, diagnosed him with cervical whiplash

---

[1] A more detailed description of the underlying facts and procedural history is contained in Judge Netburn's Report and Recommendation, dated July 27, 2017. (Doc. 23.)

[2] "R&R" refers to Judge Netburn's Report and Recommendation, dated July 27, 2017. (Doc. 23.)

2

injury, prescribed physical therapy and continued medication, and concluded that Plaintiff's back and leg symptoms had resolved completely. (*Id.*) Plaintiff attended physical therapy at Chamberlain Physical Therapy at least four times in January 2014 for his neck pain. (*Id.* at 4–5.) During one session, the physical therapist indicated that Plaintiff needed time off of work to rest because work was aggravating his condition. (*Id.* at 4.) In a questionnaire, Plaintiff reported that he could complete certain tasks and activities with some pain, such as driving and engaging in recreational activities. (*Id.* at 4–5.) After four physical therapy sessions, Plaintiff discharged himself from treatment, reporting continued pain, but some improvement as of his last visit. (*Id.* at 5.)

Beginning in January 2014, Plaintiff began seeing Dr. David Kaseman, a chiropractor. (*Id.* at 5.) Dr. Kaseman ordered MRIs of Plaintiff's lumbar and cervical spine and performed a nerve conduction study of Plaintiff. (*Id.*) He referred Plaintiff to Dr. William Weinstein, an acupuncturist, and Dr. Ajay Kiri. (*Id.*) Plaintiff visited Dr. Kiri on several occasions between February 2014 and September 2015. (*Id.* at 6.) Dr. Kiri diagnosed Plaintiff with post-traumatic headache, lumbar sprain, neck sprain, and muscle spasms. (*Id.*) In December 2014, Dr. Kiri noted that Plaintiff (1) was unable to perform any meaningful work or activity, (2) was unable to sit for prolonged periods of time, and (3) that his strength was grossly weakened in the left upper extremity. (*Id.* at 8.) On July 19, 2015, Dr. Kiri completed a functional assessment form for Plaintiff and noted that Plaintiff's symptoms would increase if he worked in a competitive environment, that he would require at least three absences a month because of his impairments, and that he had learned to tolerate pain but his overall productivity was poor. (*Id.* at 8–9.) He also noted that Plaintiff could function in a "low stress" work environment. (*Id.* at 9.)

Plaintiff also visited several other doctors, including Dr. William Weinstein, an

3

acupuncturist; Dr. Sudhir Diwan, a referral from Dr. Kiri; Dr. Howard Rombom, a psychologist; Dr. Marc Berezin, an orthopedist; Dr. Nicole Bromley, a psychologist; Dr. Kautilya Puri; and Dr. Lauren Hoffman, a psychiatrist. The relevant facts associated with their assessments and conclusions are laid out in the Report. (*Id.* at 10–14.)

Plaintiff filed an application for disability insurance benefits on June 20, 2014, alleging a disability onset date of December 7, 2013. (*Id.* at 2.) His application was denied on November 10, 2014. (*Id.*) After a hearing before Administrative Law Judge ("ALJ") Robert Gonzalez on August 11, 2015, at which Plaintiff appeared by counsel and testified, the ALJ issued a decision finding that Plaintiff was not disabled. (*Id.*) The Appeals Council denied review on April 1, 2016. (*Id.*)

Plaintiff filed this action on April 26, 2016. (Doc. 1.) I referred the case to Judge Netburn on June 21, 2016. (Doc. 9.) Defendant submitted its Answer on September 8, 2016. (Doc. 11.) On November 22, 2016, Plaintiff filed his motion for judgment on the pleadings, (Docs. 15–16), and Defendant cross-moved for judgment on the pleadings on January 17, 2017, (Docs. 19–20). Plaintiff filed a reply memorandum on February 6, 2017, (Doc. 21), and Defendant filed a response on February 10, 2017, (Doc. 22). Judge Netburn issued her Report and Recommendation on July 27, 2017. (Doc. 23.) Defendant filed its objection on August 10, 2017, (Doc. 24), and Plaintiff filed his response on August 24, 2017, (Doc. 25).

## II. <u>Legal Standards</u>

### A. *Review of the Magistrate Judge's Report*

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). A party may make objections to a report and recommendation

4

"[w]ithin 14 days after being served with a copy of the recommended disposition." Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). The district court "may adopt those portions of the report to which no 'specific, written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Adams v. N.Y. State Dep't of Educ.*, 855 F. Supp. 2d 205, 206 (S.D.N.Y. 2012) (quoting Fed. R. Civ. P. 72(b)). "If a party timely objects to any portion of a magistrate judge's report and recommendation, the district court must 'make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'" *Bush v. Colvin*, No. 15 Civ. 2062 (LGS) (DF), 2017 WL 1493689, at *4 (S.D.N.Y. Apr. 26, 2017) (quoting *United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015)).

A party's objection "must be specific and clearly aimed at particular findings in the R&R." *Bussey v. Rock*, No. 12-CV-8267 (NSR) (JCM), 2016 WL 7189847, at *2 (S.D.N.Y. Dec. 8, 2016) (internal quotation marks omitted). "[T]he court will review the R&R strictly for clear error when a party makes only conclusory or general objections, or simply reiterates the original arguments." *Id.* (internal quotation marks omitted); *see also Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) (noting that reviewing court "is only obliged to review the Report for clear error" where "objections largely reiterate the arguments made to, and rejected by" the magistrate judge); *Vega v. Artuz*, No. 97-CV-3775, 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002) ("[O]bjections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition will not suffice to invoke de novo review of the magistrate's recommendations.").

### B. *Review of the Commissioner's Decision*

In reviewing a social security claim, "it is not [the court's] function to determine de novo

whether plaintiff is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quoting *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)); *see also Riordan v. Barnhart*, No. 06 CIV 4773 AKH, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007). Instead, a reviewing court considers merely whether the correct legal standards were applied and whether substantial evidence supports the decision. *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008); *see also* 42 U.S.C. § 405(g) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burgess*, 537 F.3d at 127 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004)). It is "a very deferential standard of review—even more so than the 'clearly erroneous' standard." *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012) (citing *Dickinson v. Zurko*, 527 U.S. 150, 153 (1999)). "The substantial evidence standard means once an ALJ finds facts, [a reviewing court] can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." *Id.* (internal quotation marks omitted).

### C. *Disability Standard*

To be considered disabled under the SSA, a claimant must show an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment," which has lasted or can be expected to last for at least 12 months, that is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work." 42 U.S.C. § 423(d)(1)(A), (2)(A). The Commissioner has established a five-step evaluation process to determine whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. [T]he claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). "The Social Security regulations define residual functional capacity as the most the claimant can still do in a work setting despite the limitations imposed by his impairments." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013).

## III. Discussion

Plaintiff objects to Judge Netburn's finding that the ALJ appropriately determined that Plaintiff had the residual functional capacity for sedentary work with certain additional restrictions on three grounds: (1) the ALJ improperly afforded little weight to the opinion of Plaintiff's treating physician, Dr. Kiri; (2) the ALJ improperly assessed the credibility of Plaintiff's subjective complaints; and (3) the ALJ's determination of Plaintiff's residual functional capacity is unsupported by substantial evidence. (Pl.'s Obj. 2–9.)[3] Plaintiff has not demonstrated that Judge Netburn's findings were wrong. I have reviewed the remainder of Judge Netburn's Report for clear error and find none.

---

[3] "Pl.'s Obj." refers to Plaintiff's Memorandum of Law Objecting to Report and Recommendation of Magistrate Judge Sarah Netburn, filed on August 10, 2017. (Doc. 24.)

### A. *Opinion of Dr. Kiri*

The "treating physician rule" provides that a treating physician's opinion "is deemed controlling only if it is well-supported by clinical evidence." *Schaal*, 134 F.3d at 504. In other words, an ALJ need not afford great or controlling weight to a treating physician when substantial evidence in support is lacking. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004). Before an ALJ can afford a treating physician less than controlling weight, she must consider various factors, including: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical support for the treating physician's opinion; (4) the consistency of the opinion with the record as a whole; (5) the physician's level of specialization in the area; and (6) other factors tending to support or contradict the opinion. *See* 20 C.F.R. § 416.927(c)(2)–(6); *see also Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993). While the ALJ need not explicitly address each factor in her analysis, she must provide "good reasons" for the weight she gives to the treating source's opinion. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004). Generally, "the less consistent the [treating physician's] opinion is with the record as a whole, the less weight it will be given." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).

Plaintiff argues that Judge Netburn "cherry-picked" evidence from the record to conclude that the ALJ's discounting of Dr. Kiri's opinion was supported by substantial evidence. (Pl.'s Obj. 2–5.) I disagree. Judge Netburn thoroughly evaluated Dr. Kiri's opinion and found that his conclusion that Plaintiff suffered "near-total functional loss" was inconsistent with Dr. Kiri's own treatment notes and the findings of six other doctors—Dr. Berezin, Dr. Puri, Dr. Weinstein, Dr. Diwan, Dr. Bromley, and Dr. Hoffman. (R&R 21–25.) Plaintiff's citations to other parts of the record to support the argument that Judge Netburn cherry-picked evidence are unavailing.

For example, Plaintiff argues that Judge Netburn's citation to an MRI report stating improvement from a prior MRI was inappropriate because the MRI report contained a typographical error. (Pl.'s Obj. 4.) However, accepting that the MRI report contained a typographical error, a full reading of the MRI report clearly indicates that it evidenced an improvement from an MRI a year earlier. (Def.'s Resp. 4.)[4] I find that Plaintiff's remaining arguments on this point are equally unavailing, and that the ALJ's placement of little weight on the opinion of Dr. Kiri was supported by substantial evidence.

### B. *Credibility of Plaintiff's Subjective Complaints*

The ALJ is responsible for evaluating a claimant's credibility and deciding whether to credit or discredit her subjective estimate of the degree of her impairment. *See Aponte v. Sec'y, Dep't of Health & Human Servs. of U.S.*, 728 F.2d 588, 591 (2d Cir. 1984). The applicable regulations provide for a two-step process for evaluating a Plaintiff's self-reported testimony about his own symptoms:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment, i.e., an impairment that can be shown by medically acceptable clinical and laboratory diagnostic techniques, that could reasonably be expected to produce the individual's pain or other symptoms. . . . Once an underlying medical impairment that could reasonably be expected to produce the symptoms is shown, the second step is for the adjudicator to evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work.

*See Sarchese v. Barnhart*, No. 01-CV-2172(JG), 2002 WL 1732802, at *7 (E.D.N.Y. July 19, 2002) (internal citations and quotation marks omitted). The ALJ must consider "all of the evidence in the record and give specific reasons for the weight accorded to the claimant's

---

[4] "Def.'s Resp." refers to Defendant's Response to Plaintiff's Plaintiff's Memorandum of Law Objecting to Report and Recommendation of Magistrate, filed August 24, 2017. (Doc. 25.)

9

testimony." *Alcantara v. Astrue*, 667 F. Supp. 2d 262, 277 (S.D.N.Y. 2009).

The ALJ found that Plaintiff's "allegations of extreme debilitation" were "not corroborated or well supported by substantial medical evidence in the medical record." (R&R 28.) Judge Netburn found that this conclusion was not inappropriate given Plaintiff's self-assessments indicating that he could perform certain activities normally, though with some pain; the conclusions of Dr. Kiri that Plaintiff could function in a "low stress" work environment, though with poor productivity; and the conclusions of Dr. Berezin and Dr. Puri that Plaintiff could engage in sedentary work with some limitations. (*Id.* at 28–29.) Based on the evidence cited by the ALJ and Judge Netburn, I find that the ALJ's conclusion that Plaintiff's allegations of extreme debilitation were not credible was supported by substantial evidence.

### C. *ALJ's Residual Functional Capacity Finding*

Plaintiff also takes issue with the ALJ's Residual Functional Capacity finding because it purportedly did not take into account Plaintiff's sensation loss and radicular pain throughout his upper extremities, particularly his left upper extremity. (Pl.'s Obj. 8–9.) Plaintiff contends that the ALJ failed to take into account the medical evidence indicating that Plaintiff has severe limitations in gross manipulation, fine manipulation, and overhead reaching, rendering the ALJ's residual functional capacity finding inappropriate. (*Id.*) However, the ALJ found that Plaintiff was limited to lifting ten pounds and could only occasionally reach overhead with his left arm. (*See* R&R 26.) The ALJ's determination that Plaintiff did not have any additional functional limitations is supported by substantial evidence, in particular the reports of Dr. Southern, Dr. Berezin, Dr. Diwan, and Dr. Puri. (*Id*. 23-24, 26-27.)

Based on the foregoing, I agree with Judge Netburn's reasoned conclusion that the ALJ's determination was based on substantial evidence.

### D. *Remainder of the Report*

I have reviewed the remainder of Magistrate Judge Netburn's thorough Report and Recommendation for clear error and find none.

### IV. **Conclusion**

Based upon the above, I adopt the Report in its entirety. Plaintiff's motion for judgment on the pleadings, (Doc. 15), is DENIED, and the Commissioner's cross-motion for judgment on the pleadings, (Doc. 19), is GRANTED. The Clerk of Court is respectfully directed to enter judgment on behalf of Defendant and close this case.

SO ORDERED.

Dated: November 7, 2018
      New York, New York

_____
Vernon S. Broderick
United States District Judge